# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CLARA ELIZABETH BEASLEY,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | 1:16-cv-03041-WSD |

# OPINION AND ORDER

This matter is before the Court on United States Magistrate Judge John K. Larkins III's Final Report and Recommendation [16] ("R&R"). The R&R recommends that the Court affirm the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff Clara Elizabeth Beasley's ("Plaintiff") application for supplemental security income. Also before the Court is Plaintiff's Objections to the R&R [18].

## I.    BACKGROUND

### A.    Procedural History

On December 18, 2012, Plaintiff filed her application for supplemental security income alleging disability beginning May 15, 2000. (Social Security Tr. [8] ("Tr.") 268). The Commissioner's final decision on that application was to

deny benefits. (Tr. 133-144). Plaintiff had a hearing before an Administrative Law Judge ("ALJ") on January 14, 2015. (Tr. 150-82). On February 18, 2015, the ALJ issued its finding that Plaintiff was not disabled. (Tr. 133-44). Plaintiff requested review of the hearing decision, and on June 24, 2016, the Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-8). Plaintiff then filed this civil action seeking review of the Commissioner's denial of benefits.

On October 24, 2017, the Magistrate Judge issued the R&R, recommending that the decision of the Commissioner be affirmed. ([16]). The Magistrate Judge found that substantial evidence supports the ALJ articulation of "good cause" for discounting the opinion of Plaintiff's treating physician, Angel Luis Perez, MD ("Dr. Perez").

On November 7, 2017, Plaintiff filed objections to the Magistrate Judge's R&R. ([18]).

B.  Facts

Plaintiff was 30 years old at the onset of her alleged disability and 44 years old at the time of the ALJ's decision. (Tr. 144, 341). She has held jobs at a wood plant, grocery store, and fast-food restaurant. (Tr. 295). Plaintiff graduated from high school, taking special education classes. (Tr. 171, 426, 649).

2

On February 23, 2013, Plaintiff, accompanied by her roommate's sister, Lynette Bailey ("Bailey"), was evaluated by consultative psychologist Cheryl A. Gratton, Ph.D at the request of the Social Security Administration. (Tr. 426-30, 427-28). Dr. Gratton extensively summarized the interviews in her report. Dr. Gratton conducted a mental status examination, which revealed that Plaintiff's articulation was poor, and her speech was characterized by a heavy regional dialect. (Tr. 428). There were no obvious behavioral anomalies apart from malingering in the testing portion of the evaluation. Her intelligence appeared to be slightly, but not significantly, below average during conversational speech. (Id.). Her speech was "fluent, prosodic, and free from paraphasic errors." (Tr. 429). Dr. Gratton noted that Plaintiff described a history of auditory hallucinations that was "poorly substantiated." Dr. Gratton described Plaintiff's thought processes as "logical and coherent" and her "rate of mentation" was normal. Dr. Gratton noted that Plaintiff was unable to comprehend abstraction, she was not oriented as to time, place, or personal information, her aspects of memory functioning appeared impaired, and her speed at task performance was deficient. But Dr. Gratton also observed that the severity of those limitations was dubious because Plaintiff put forth only minimal effort during the examination. (Id.).

On WAIS-IV testing, Plaintiff obtained a full-scale IQ of 52. (Tr. 429). Dr. Gratton noted that Plaintiff did not appear to be motivated to do well on the assessment and appeared to put forth only minimal or inconsistent effort; thus, the results likely slightly underestimate Plaintiff's overall functioning. (Id.). Dr. Gratton also noted that a test for malingering clearly indicated that she was malingering. (Tr. 430).

Dr. Gratton diagnosed Plaintiff with malingering and assigned her a GAF score of 65.[1] (Tr. 430). Dr. Gratton summarized her findings as follows:

> [Plaintiff's] IQ is in the Defective range, but frank and flagrant malingering during testing indicates that this is an under-estimate of her actual level of functioning. The psychometrist actually asked Ms. Beasley aloud if anyone had coached her to perform poorly because her malingering was so apparent. She denied this, but it is certainly plausible that [Bailey] or her roommate may have coached her to do poorly. Based on the results of this assessment, she finds it generally easy to comprehend and carry out simple instructions. She is not likely to be challenged by difficulties getting along with others. Her attention is sufficient for the execution of her day-to-day activities. She would not be likely to decompensate under stressful conditions. Her attention is such that timely completion of tasks and assignments

---

[1] Global Assessment of Functioning or "GAF" is a numerical measurement of an individual's overall functioning "with respect only to psychological, social, and occupational functioning" using a 1 to 100 point scale. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. text rev. 2000) ("DSM IV"); see Kent v. Acting Comm'r of Soc. Sec. Admin., 651 F. App'x 964, 966 n.4 (11th Cir. 2016).

4

would not prove difficult. She is capable of self-management of
disability fund, if awarded, as best can be determined.

(Tr. 430).

On March 25, 2013, Plaintiff underwent a consultative physical examination with Tiffany S. Lee, M.D., at the request of the Social Security Administration. (Tr. 432-34). Plaintiff reported several mental impairments to Dr. Lee, including difficulty with short and long-term memory, mood swings, hearing voices, and depressive feelings and mood. (Tr. 432). Dr. Lee indicated that Plaintiff was alert and oriented, did not appear depressed or anxious, her mood and affect were appropriate, her grooming was appropriate, and there was no evidence of memory problems. (Tr. 434).

On September 23, 2014, Plaintiff underwent a psychosocial assessment with Dr. Perez. (Tr. 633, 650-656). During the evaluation, Plaintiff reported that she had been on medications before and felt that they were not working well, but she could not recall which mediations she was taking. (Tr. 651). She reported "extensive traumatic [history] when she was young" but did not wish to speak of it. She stated that she would have nightmares and flashbacks three to four times per week. She also stated that when she was a teenager she began to experience hallucinations telling her to hurt herself and others but that she never acted on the commands. She reported that she had been feeling depressed since she was a

5

teenager. She described her motivation and energy as low, frequent crying spells, and feelings of guilt, worthlessness, and hopelessness. Her sleep and appetite were "fair." Her symptoms caused her to be "very anxious, almost panicky." (Id.).

Dr. Perez diagnosed Plaintiff with major depressive disorder, recurrent, severe with psychotic features, posttraumatic stress disorder, and mild mental retardation, and assessed her with a GAF score of 54.3. (Tr. 633-34). He also prescribed Zoloft to help with depression, anxiety, and traumatic symptoms, and Abilify to help with hallucinations and delusions. (Tr. 653). He recommended Plaintiff continue with intensive outpatient services for at least six months with a social worker. (Tr. 617, 653).

Also on September 23, 2014, social worker Natasha Colvin performed a mental health assessment. (Tr. 547). Plaintiff stated that she wanted to deal with issues from her past and recounted traumatic events from her childhood, including being in and out of foster care, enduring molestation by "boys in foster home," abuse by her mother, and, when she was four years old, her mother's suicide. (Tr. 546, 578-79). She also reported depression, crying, irritability, and problems sleeping but denied current suicidal or homicidal ideations. (Tr. 546). She stated that she was "good at" cleaning and grocery shopping, dressing herself, and keeping herself clean. Id.

On October 2, 2014, Plaintiff returned for an individual psychotherapy session with Ms. Colvin. (Tr. 619-21). Ms. Colvin noted that Plaintiff was alert and oriented, that she reported her feelings as "very good," and that she was feeling "a lot better" with medication. (Tr. 619-20). Ms. Colvin assessed Plaintiff as alert and oriented, with good judgment, good insight, normal mood, and normal affect. (Tr. 619-20). Her thoughts were goal-oriented with good eye contact and verbal communication. (Tr. 620). Plaintiff denied any suicidal or homicidal ideations, hallucinations, or delusions. (Id.).

On October 16, 2014, Plaintiff attended a psychotherapy session with Ms. Colvin. (Tr. 622-23). Plaintiff's assessment was generally normal, except that Ms. Colvin noted that Plaintiff was tearful when talking about her past. (Tr. 623.) Plaintiff also reported "daily activity outside of the home." (Id.). That same day, in a clinical report, Dr. Perez repeated his diagnoses of major depressive disorder, recurrent, severe with psychotic features, posttraumatic stress disorder, and mild mental retardation, and again assessed her with a GAF score of 54. (Tr. 635).

On October 31, 2014, Plaintiff again attended a psychotherapy session with Ms. Colvin. (Tr. 534-35). Plaintiff's assessment was generally normal, except that she reported audio hallucinations of hearing a friend call her name. (Id.). Plaintiff reported that she would cope by walking her dog, sitting on the porch, and "doing

7

puzzle books." (Tr. 534). She also reported reduced crying spells and daily journaling of her thoughts and feelings. (Tr. 535).

On December 2, 2014, Dr. Perez again diagnosed Plaintiff with major depressive disorder, recurrent, severe with psychotic features, posttraumatic stress disorder, and mild mental retardation, and assessed her with a GAF score of 54. (Tr. 637-38).

On December 12, 2014, Plaintiff attended therapy with Ms. Colvin. (Tr. 628). In a clinical report, Ms. Colvin noted that Plaintiff's coping skills and calming strategies included walking and puzzles. (Tr. 665).

On December 23, 2014, Dr. Perez completed a medical evaluation form in which he reported that Plaintiff was suffering from "depressive syndrome" characterized by anhedonia, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and hallucinations, delusions, or paranoid thinking. (Tr. 667-70). Dr. Perez indicated that Plaintiff had marked limitations in her activities of daily living, maintaining social functioning, and her concentration, persistence or pace, which resulted in her inability to complete tasks in a timely manner. (Tr. 669). Dr. Perez also reported that Plaintiff had four or more repeated episodes of "decompensation," each of extended duration. (Id.).

Dr. Perez additionally reported that Plaintiff had a "[m]edically documented history of chronic affective disorder of at least 2 years' duration that has caused more than minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support." (Tr. 669). He further indicated that Plaintiff had "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause [her] to decompensate." (Id.).

Dr. Perez described Plaintiff's functional limitations as follows:

> Due to [Plaintiff's] traumatic and depressive symptoms [she] has decreased functionality in several areas of her life including occupational, socially and taking care of herself.

(Tr. 670). To support of his findings, Dr. Perez explained that Plaintiff had a long history of mood and traumatic symptoms with fair prognosis with adequate treatment. Dr. Perez further opined that Plaintiff would be unable to engage in gainful employment. (Id.).

C. The ALJ's Decision

On January 14, 2015, Plaintiff and Bailey appeared and testified before the ALJ. (Tr. 150-83). Plaintiff testified that she completed the twelfth grade through a special education program. (Tr. 157-58). She stated that she can read but is

9

limited to simple words. (Tr. 158). She can count change but cannot do more advanced mathematics. (Id.). She testified that she cannot do household chores without assistance from Bailey. (Tr. 159).

Plaintiff testified that she is not depressed "very often" and feels depressed two to three times per week. (Tr. 162). She believes that her depression is triggered when she thinks back to traumatic events that occurred during her childhood. She reported nightmares two to three times per week. (Id.). She also testified that starting around four years earlier, she started hearing voices inside her head, and that the voices have worsened over time. (Tr. 162-63). The voices in her head aggravate her and affect her ability to do things. (Tr. 164). Plaintiff reported that she had been taking medication for approximately four months that helped with the voices in her head, so that they would occur only two to three times per week for approximately 20 minutes. (Tr. 164-65).

Bailey testified that Plaintiff has lived with her since 2006. (Tr. 167). Bailey works as a home health care provider. (Tr. 168). Plaintiff accompanies her to work and helps her by performing light tasks. (Tr. 168-69). Bailey testified that she cannot leave Plaintiff unattended and gave an example of an instance where Plaintiff left a stove unattended. (Tr. 169-70). Bailey stated that Plaintiff can prepare simple meals, such as making a sandwich, but cannot prepare food using a

knife because her hand is shaky. (Tr. 170). Bailey testified that she would help Plaintiff with personal hygiene and her brother would help with clothing. (Tr. 173). She also described Plaintiff's attention span as "short . . . like a child" and that she has difficulty completing household chores. (Tr. 173-74).

The ALJ found that Plaintiff had the severe impairment of mild patellofemoral degenerative changes of the right knee but that Plaintiff's medically determinable mental impairments of depressive disorder, posttraumatic stress disorder, personality disorder, and substance dependence, were nonsevere as they did not cause more than minimal limitation on her ability to perform basic mental work activities. (Tr. 135). The ALJ also found that she did not have an impairment or combination of impairments that met or medically equaled a listing. (Tr. 136).

The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work except that she (1) could stand and walk for up to a total of 4 hours and sit for up to 6 hours in an 8-hour workday; (2) could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; (3) could only occasionally stoop, kneel, crouch, and crawl; (4) could only frequently balance; (5) should avoid concentrated exposure to hazardous such as unprotected heights; and (6) could only frequently push/pull with the right lower extremity. (Tr. 137).

In assessing the RFC, the ALJ gave "little weight" to Dr. Perez's opinions set forth on the "medical evaluation" form. (Tr. 142). The ALJ explained that Dr. Perez's opinion that Plaintiff was disabled and possessed marked limitations in functioning were contrary to the objective medical evidence. The ALJ observed that Dr. Perez found that Plaintiff had marked limitation in functioning, but that Plaintiff reported "very broad activities of daily living, social functioning and in concentration, persistence and pace." The ALJ also noted that Plaintiff reported that she was limited by psychological impairments, but Dr. Perez's assessments of her included "little to no deficits." This indicated that Plaintiff's subjective complaints, rather than the medical findings of Dr. Perez, "were relied upon in finding the claimant disabled." With regard to Dr. Perez's finding that Plaintiff was disabled, the ALJ noted that "whether an individual is 'disabled' or whether their residual functional capacity prevents them from doing past relevant or any other work is an administrative finding that is dispositive of a case; i.e. a finding that would direct the determination or decision of disability." The ALJ considered Dr. Perez's remaining findings and concluded that "the assessment that [Plaintiff] had marked functional limitations and was disabled not only is contrary to the longitudinal record, but is internally inconsistent with [Dr. Perez's] own progress notes." The ALJ went on to state that Plaintiff argued during the administrative

proceedings that she met a Listing based on Dr. Perez's assessment, but that the argument was "unsupported by the record which showed the claimant to be malingering." (Id.)

The ALJ next found that Plaintiff did not have any past relevant work, but considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. 143-44.) Accordingly, the ALJ concluded that Plaintiff was not disabled since December 18, 2012 and February 18, 2015, the date of the decision. (Tr. 144).

## II. DISCUSSION

### A. Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). If no party has objected to the report and recommendation, a court conducts only a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam). Because Plaintiff has objected to the

13

R&R, the Court conducts its de novo review of those portions of the R&R to which objection is made. See 28 U.S.C. § 636(b)(1).

B. Analysis

For disability benefits claims filed before March 27, 2017, the ALJ must evaluate medical opinion evidence in accordance with the factors in 20 C.F.R. § 416.927(c). See also Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1376-77 (N.D. Ga. 2006). Those factors include whether the physician examined the patient, the evidence presented in support of the opinion, the physician's specialty, and the consistency of the opinion with the record as a whole. 20 C.F.R. § 416.927(c). A treating physician's opinion generally is entitled to more weight. Id. § 416.927(c)(2). When the treating physician's opinion is well-supported by clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ should give the opinion controlling weight. Id.

An ALJ must give the medical opinions of a treating physician "substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks omitted); see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Good cause exists when: (1) the opinion "was not bolstered by the evidence," (2) the "evidence

supported a contrary finding," or (3) the "treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241. The Eleventh Circuit has held that "the ALJ must clearly articulate the grounds for the decision to discredit medical opinion evidence," and it "will not affirm 'simply because some rationale might have supported the ALJ's conclusion.'" Tavarez v. Comm'r of Soc. Sec., 638 F. App'x 841, 846 (11th Cir. 2016) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011)). "In such a situation, to say that the ALJ's decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Winschel, 631 F.3d at 1179. "When substantial evidence supports the ALJ's articulated reasons for assigning limited weight to a treating physician's opinion, there is no reversible error." Duval v. Comm'r of Soc. Sec., 628 F. App'x 703, 709 (11th Cir. 2015).

In her Objections, Plaintiff argues generally that the ALJ's decision to discount Dr. Perez's opinion was based on an incomplete understanding of the medical evidence. Plaintiff argues that Dr. Perez's opinion was not "contrary to the objective medical evidence." The Court disagrees. Treatment notes from Clifton Springs, where Dr. Perez treated Plaintiff, consistently reflect that Plaintiff

15

was well-oriented, and had good insight, normal affect, normal mood, and goal-oriented thoughts during the entire three-month period during which she was treated there. (See Tr. 620, 623, 625, 639). Likewise, Dr. Gratton's comprehensive evaluation indicated that Plaintiff displayed "frank and flagrant malingering during testing" and noted that the findings of the mental status evaluation were not entirely accurate because Plaintiff put forth minimal effort. (Tr. 430). Dr. Lee likewise noted that Plaintiff was alert and oriented, that she did not appear depressed or anxious, that her mood and affect were appropriate, that she was groomed appropriately, and there was no evidence of problems with memory. (Tr. 434).

Plaintiff also argues that the ALJ erred by failing to consider Plaintiff's limitations with activities of daily living, social function, and concentration. Plaintiff takes issue with the ALJ's statement that Plaintiff had an "extremely wide" range of daily activities, pointing to her roommate's sister's testimony that Plaintiff could not be left alone, that she received help with personal hygiene and dressing, that her attention span was very short, and that she tried to do household chores but had difficulty completing them. The Court finds these arguments unpersuasive, as the record contains ample evidence to the contrary. Plaintiff reported in her function report and during her examination with Dr. Gratton that

she attended to her personal hygiene and grooming, that she watches television programs for a majority of the day (including game shows, courtroom dramas, talk shows, and the news), works on word puzzles, does light housework, prepares simple meals, and goes shopping. (Tr. 324-29, 427-28).

The ALJ noted "numerous contradictions" in Plaintiff's statements to examiners:

> [Plaintiff] reported a legal history that included prostitution, drugs and alcohol with her receiving jail time. She later reported to professionals at DeKalb Community that she had no legal history at all (nothing civil or criminal). She reported she was raped in 2008, but told mental health therapist [sic] her life trauma was in the form of her mother committing suicide, being physically abused by her mother and being inappropriately touched when she was a child by boys in the foster home. She related that she was diagnosed with being mentally retarded and unable to read, but later acknowledged doing word puzzles and journaling her thoughts and feelings. Unbelievably, the claimant also claimed her mental retardation was treated with medications. While she reported only being able to read words like dog and cat, the [ALJ] noted that she consistently reported doing word puzzles, reported journaling her thoughts and feelings and competed a Function reports [sic] by herself and used words far beyond dog and cat.

(Tr. 141). The Court finds that the record supports the ALJ's findings and conclusions.

As her last objection to the ALJ's decision, Plaintiff argues that the ALJ erroneously found that Dr. Perez's opinion was inconsistent with his clinical notes. But substantial evidence supports the ALJ's finding that Dr. Perez's opinions were

17

inconsistent with the progress notes of the "professionals" at Clifton Springs—i.e., Dr. Perez *and* Ms. Colvin. As discussed above, the progress notes showed that Plaintiff's mental evaluations with Ms. Colvin were generally unremarkable and that she was not as limited as Dr. Perez opined.

The Court's de novo review of the ALJ's findings is limited to whether they are supported by substantial evidence, and here, substantial evidence supports the reasons articulated by the ALJ for discounting Dr. Perez's opinion. Plaintiff exhibited unremarkable examination findings. A consultative examiner concluded that Plaintiff was malingering during her examination. At several points in the record, Plaintiff reported the ability to conduct tasks of daily living. Lastly, Dr. Perez failed to support his opinion with reference to clinical notes.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Clara Elizabeth Beasley's Objections to the R&R [18] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Magistrate Judge John K. Larkins III's Final Report and Recommendation [16] is **ADOPTED**.

**SO ORDERED** this 29th day of January, 2018.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE